UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| MARINA ARIK,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>　　　　　Defendant. | Case No: C 08-5564 SBA<br><br>**ORDER GRANTING IN PART AND DENYING IN PLAINTIFF AND DEFENDANT'S CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br><br>Docket 17, 19, 21 |

　　　　Plaintiff Mariana Arik filed the instant action seeking judicial review of a final decision of the Commissioner of Social Security (Commissioner) under 42 U.S.C. § 405(g). The parties are presently before the Court on Plaintiff's Motion for Summary Judgment (Docket 17) and Defendant's Cross-Motion for Summary Judgment (Docket 19). Having read and considered the papers submitted, and having reviewed the record, the Court GRANTS IN PART AND DENIES IN PART the parties' respective motions. The Court REMANDS this case to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further development of the record as to certain issues, as set forth below.

I.　**BACKGROUND**

　　A.　**FACTUAL SUMMARY**

　　　　Plaintiff was born on February 4, 1973. Administrative Record (AR) 81. She did not complete high school and has no vocational training, though she did obtain a GED. AR 322. She has a documented history of substance abuse. AR 321. With regard to her work history, Plaintiff was employed by the Peppermill restaurant from 1991 through 1993 as a waitress,

1  hostess and assistant office manager. AR 352. From December 1993 to June 1994, she
2  worked at Lulu Wellington restaurant as a waitress. AR 351-52. From June 1994 to
3  September 1994, Plaintiff worked as a bookkeeper and hostess at Kyoto Restaurant. AR 351.
4        Thereafter, Plaintiff was employed part-time as a deli worker, preparing sandwiches, at
5  Lagunitas Grocery (Lagunitas) from around April 1995 to February 1996. AR 325. She
6  worked approximately fifteen hours per week, though she worked up to thirty hours per week
7  during the peak Summer season. AR 326. In or about December 1995, while still employed
8  by Lagunitas, Plaintiff started working as a survey interviewer for Friedman Marketing
9  (Friedman). AR 327-328. In that position, Plaintiff worked approximately ten to fifteen hours
10 per week at a shopping mall where she asked shoppers to take a survey. AR 328. Plaintiff
11 remained employed by Friedman until about May 1996, when she was terminated because she
12 could not "keep up with the pace [at] . . . Christmas time, when it's the busiest" and "wasn't
13 getting along with the manager." AR 331-34. After her job at Friedman ended, Plaintiff
14 worked for one week at a pizzeria. AR 334. However, Plaintiff alleges that she could not
15 perform her job duties of serving food and cleaning up due to her bilateral carpal tunnel
16 syndrome. AR 334.
17       With regard to Plaintiff's medical and mental health history, the record shows that
18 Plaintiff underwent an intake evaluation by Dr. Rick H. Sapp at Kaiser Hospital (Kaiser) on
19 November 3, 1993. AR 188. The meeting was scheduled by Plaintiff's father, who described
20 Plaintiff as "incoherent" and undergoing amphetamine withdrawal. AR 65, 188. During the
21 interview, Plaintiff disclosed minor and intermittent recreational drug use, but denied use of
22 marijuana or alcohol. AR 188. Dr. Sapp opined that Plaintiff "appears to be experiencing a
23 major depression in reaction to situational events which may be compounded by having had an
24 abortion." AR 190. Thereafter, between June and August 1994, Plaintiff had attended four
25 therapy sessions. AR 66. Around this time period, she also began taking anti-depressant
26 medication, including Prozac and Trazadone (Desyrel). Id. She was hospitalized in January
27 1995 following a drug binge, and thereafter, began taking Naprosyn and Lithium, in addition to
28 Prozac. AR 66.

On July 3, 1995, Dr. Gerald Hill conducted a consultative psychiatric evaluation of Plaintiff. AR 250. He diagnosed her with "Bipolar disorder, type I, with both manic and depressed episodes, recurring." Id. In addition, Dr. Hill noted that she was "[f]unctioning at the present time . . . at about a 50% level," which is "the best she has been in 12 months[.]" Id. As far as Plaintiff's prognosis, Dr. Hill stated that she might be better "after a year or two" and "certainly is not able to be responsible today . . . ." Id. By August 1995, Plaintiff was taking Naprosyn, Prozac and Depakote (an anti-convulsant medication for seizures). AR 66. Progress notes from January 1996 also indicate that Plaintiff was being continued on Prozac. AR 66-67. There are no mental health records in the file for the time period from February 1996 to March 1998. AR 67.

## B. PROCEDURAL HISTORY

On February 16, 1995, Plaintiff filed a protective application for Disability Insurance Benefits under Title II of the Social Security Act Administrative Record (AR) 64, 81-83. At the time she filed her application, Plaintiff, then single and twenty years-old, claimed that she was unable to work as of August 1, 1993, due to manic depression. AR 81. The Commissioner denied Plaintiff's claim for benefits on August 3, 1995. AR 97-100. Plaintiff filed a Request for Reconsideration on January 2, 1996, which the Commissioner denied on November 25, 1996. AR 101-104, 107-110.

On December 27, 1996, Plaintiff submitted a Request for Hearing by Administrative Law Judge. AR 111. After conducting a hearing at which Plaintiff was represented by attorney Ian Sammis, the Administrative Law Judge (ALJ) issued a Decision on January 26, 1999. AR 64-73. The ALJ ruled that Plaintiff was not disabled between August 1, 1993 and March 2, 1998, but was disabled and entitled to benefits from March 2, 1998, onward. AR 73. The Decision became final on or about March 14, 2000, when the Appeals Council denied Plaintiff's request for review. AR 55.

On September 27, 2004, Plaintiff filed a Request for Hearing in order to reopen her claim and to extend the time for her to file an appeal. AT 54. On March 3, 2006, the Commissioner issued an Order of Dismissal which stated that the "Request for Hearing . . . is

1  being dismissed for lack of jurisdiction since it is in fact a Request for Extension of Time to
2  File Action in Federal District Court . . . ." AR 22. The Appeals Council subsequently denied
3  Plaintiff's Request for More Time to File a Civil Action. AR 5. In the meantime, Plaintiff
4  commenced an action in this Court to compel the Commissioner to provide the claims file and
5  conduct a hearing on her request to reopen. AR 49-51; see Taverniti v. Astrue, N.D. Cal. Case
6  No. C 04-4932 SBA. On September 30, 2008, the Court reversed the Appeals Council's
7  decision and remanded the action with instructions to grant Plaintiff an extension of time
8  within which Plaintiff could file an appeal challenging the ALJ's Decision of January 26, 1999.
9  AR 375. Plaintiff filed this action on December 12, 2008, seeking review of the ALJ's
10  decision that Plaintiff had failed to demonstrate that she was disabled during the time period
11  from August 1, 1993 to March 2, 1998.

12        The parties have filed cross-motions for summary judgment. Plaintiff seeks a remand
13  based on the following claims: (1) the ALJ's finding that Plaintiff was not disabled during the
14  time period from August 1993 to December 1994 due to her ability to perform "past relevant
15  work" as a waitress is not supported by substantial evidence; (2) the ALJ's finding that Plaintiff
16  was not disabled from January 1995 to May 1996 due to having engaged in "substantial gainful
17  activity" during that time period is not supported by substantial evidence; (3) the ALJ's finding
18  that Plaintiff was not disabled from May 1996 to March 2, 1998 based on her ability to
19  perform past relevant work as an interviewer for a marketing firm is not supported by

substantial evidence; and (4) the ALJ's finding that Plaintiff was only partially credible for the time period from August 1993 to March 2, 1998 is not supported by substantial evidence.[1]

## II. LEGAL STANDARD

Under section 405(f) of Title 42 of the United States Code, district courts have the authority to review the Commissioner's decision denying disability benefits to a claimant. In particular, the Court reviews such decision to determine whether the findings at issue are supported by substantial evidence and the Commissioner applied the proper legal standards. Vasquez v. Astrue, 572 F.3d 586, 591 (9th Cir. 2009). Substantial evidence means more than a mere scintilla but less than a preponderance. Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 690 (9th Cir. 2009). "In determining whether the Commissioner's findings are supported by substantial evidence, [this Court] must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998). "Where the evidence can reasonably support either affirming or reversing the decision, [this Court] may not substitute [its] judgment for that of the Commissioner." Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007); Batson v. Comm'r of the Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th Cir. 2004) ("if evidence exists to support more than one rational interpretation, we must defer to the Commissioner's decision.").

---

[1] The Court notes that Plaintiff's reply raises a number of new arguments that were not presented or only briefly mentioned in her opening brief. (Docket 20). In response, the Commissioner filed a Motion to Strike Portions of Plaintiff's Reply or, in the Alternative, for Leave to File a Surreply, in which he objects to and requests that the Court strike new arguments raised for the first time by Plaintiff in her reply brief. A "district court need not consider arguments raised for the first time in a reply brief." Zamani v. Carnes, 491 F.3d 990, 997 (9th Cir. 2007) (citation omitted). Arguments that are "not specifically and distinctly argued in [the] opening brief" are waived. Dream Games of Ariz., Inc. v. PC Onsite, 561 F.3d 983, 995 (9th Cir. 2009) (internal quotation marks and citations omitted). The bare assertion of an issue in an opening brief is insufficient to present the matter for determination. Indep. Towers of Wash. v. Wash., 350 F.3d 925, 930 (9th Cir. 2003). For simplicity, however, the Court addresses the Commissioner's objections to newly-presented arguments in the context of the particular issue being discussed in this Order. The Court also notes that Plaintiff's reply is beyond the applicable page limit and lacks the requisite table of contents and table of authorities, in violation of the Local Rules. See Civ. L.R. 7-4.

## III. DISCUSSION

### A. OVERVIEW OF THE DISABILITY BENEFIT REVIEW PROCESS

Disability insurance benefits are available under Title II of the Social Security Act when an eligible claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "The claimant bears the burden of establishing a prima facie case of disability." Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995); accord Valentine, 574 F.3d at 689 ("To establish eligibility for Social Security benefits, a claimant has the burden to prove he is disabled.").

The ALJ applies a five-step sequential evaluation process to determine whether a claimant is disabled under the Act. See 20 C.F.R. § 404.1520(a). These steps are as follows:

> Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.
>
> Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work? If so, proceed to step three. If not, the claimant is not disabled.
>
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.
>
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Comm'r, Social Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006) (citing 20 C.F.R. §§ 404.1520, 416.920).

### B. "PAST RELEVANT WORK" AS A WAITRESS

The ALJ found that "[b]etween August 1, 1993 and December 31, 1994, claimant was able to perform her past relevant work as a waitress as she previously performed it." AR 72. As noted, the inquiry at step four of the sequential evaluation is: "Does the claimant possess

the residual functional capacity ('RFC') to perform his or her past relevant work? If so, the claimant is not disabled." Stout, 454 F.3d at 1052; Bray v. Comm'r of Social Security Admin., 554 F.3d 1219, 1234 n.11 (9th Cir. 2009). Plaintiff contends the ALJ's conclusion that she could perform her past relevant work as a waitress is not supported by substantial evidence because the ALJ failed to follow Social Security Ruling ("SSR") 96-8p in assessing her RFC. Pl.'s Mot. at 20-21. The Court agrees.

RFC is an administrative assessment of the extent to which a claimant's medically determinable "impairment(s), and any related symptoms, such as pain, may cause physical and mental limitations that affect what [the claimant] can do in a work setting." 20 C.F.R. § 404.1545(a)(1). In other words, RFC measures the "most [a claimant] can still do despite [the claimant's] limitations." Id. The RFC assessment considers the claimant's ability to perform sustained work-related physical and mental activities in a work setting on a regular and continuing basis of eight hours a day, for five days a week, or equivalent work schedule. SSR 96-8p.[2] The RFC assessment considers only functional limitations and restrictions which result from an individual's medically determinable impairment or combination of impairments. Id. "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, inter alia, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" Robbins v. Social Security Admin., 466 F.3d 880, 883 (9th Cir. 2006).

As noted, the ALJ must consider the claimant's ability to meet certain job demands, such as physical demands, mental demands, sensory requirements, and other functions. 20 C.F.R. §§ 404.1545(a), 416.945(a). To that end, SSR 96-8p requires the ALJ to assess the claimant's exertional limitations (sitting, standing, walking, lifting and carrying abilities) and

---

[2] SSR 96-8p, entitled "Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims," was issued by the Social Security Administration on July 2, 1996. Reprinted at 1996 WL 374184 (July 2, 1996). This guideline states: "The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 C.F.R. 404.1545 and 416.945. Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light medium, heavy, and very heavy."

non-exertional limitations (postural and manipulative abilities and mental capacity).  To conduct this assessment, the Commissioner must first identify a claimant's functional limitations or restrictions, and assess the claimant's work-related abilities on a "function-by-function" basis.  This includes the functions related to the claimant's physical abilities, mental abilities, and any other abilities affected by the claimant's impairment or impairments.  20 C.F.R. §§ 404.1545(b)-(d); 416.945(b)-(d).  In addition, the RFC assessment must contain a "thorough discussion and analysis" of the objective medical and other evidence, including pain, and a "logical explanation of the effects of these symptoms on the individual's ability to work." SSR 96-8p.

The ALJ found that Plaintiff had failed to carry her burden of proving that she could not perform "relevant past work" as a waitress for the period from August 1, 1993 through the end of 1994.  AR 68.  In his decision, the ALJ pointed out that from 1990 to 1993, Plaintiff had worked as a waitress, during which time she never claimed that she suffered carpal tunnel problems and that there was no evidence that "any physician stated at that time that claimant's functional capacities prevented her from working." Id.  Similarly, he found that Plaintiff's mental health treatment was limited to an intake visit at Kaiser in 1993 regarding amphetamine withdrawal, and visits beginning in June 1994 for psychotropic medication.  Id.  In addition, the ALJ highlighted that notes from Plaintiff's therapy session on June 13, 1994 indicated that Plaintiff planned to start working a hostess/bookkeeper five days per week, from June to August 1994.  Id.  Finally, the ALJ cited the fact that in early 1995 when Plaintiff applied for benefits, she reported that she engaged in the following activities:

> grocery shopping, cooking, laundry, dishwashing, television, movies, walking, riding the bus, hitchhiking, going to the mall, going to aerobic class at the gym, reading self-help books on mental illness, doing crossword puzzles, trying to get on a softball team, calling friends and relatives, visiting friends several times a week, going to the library, and taking sign language class.

AR 68-69.  Based on the above, the ALJ concluded that "claimant has not shown that she could not do her waitress work as she had previously performed it . . . ."  AR 69.

Absent from the ALJ's Decision is any indication that he first assessed Plaintiff's RFC on a function-by-function basis, as required by SSR 96-8p. Such an assessment is necessary so that the Plaintiff's RFC "could then have been compared with a description of the functions actually required of [Plaintiff] in her previous employment." Reed v. Massanari, 270 F.3d 838, 843 n.2 (9th Cir. 2001) (ALJ erred in failing to conduct a function-by-function assessment). "Initial failure to consider an individual's ability to perform the specific work-related functions could be critical to the outcome of a case." SSR 96-8p. SSR 96-8p instructs that "[i]t is very important to consider first whether the individual can still do past relevant work as he or she *actually* performed it because individual jobs within an occupational category as performed for particular employers may not entail all of the requirements of the exertional level indicated in the *Dictionary of Occupational Titles* and its related volumes." Id.

Despite SSR 96-8p's requirements, there is no indication that the ALJ conducted the requisite function-by-function assessment, but merely concluded that Plaintiff could perform her past work as a waitress because she could work as a hostess/bookkeeper and perform other life activities. AR 68. The Court notes that there is some authority for the proposition that the ALJ is not required to make an explicit function-by-function assessment where it is evident from the record that the ALJ did, in fact, engage in such an assessment. See Shaw v. Comm'r of Social Sec. Admin., 2008 WL 1734761 at *5 (N.D. Cal., April 14, 2008). In this case, however, the Commissioner fails to identify any part of the record that supports the conclusion that the ALJ applied or considered SSR 96-8p. The Commissioner tacitly concedes such error by completely ignoring this argument in his opposition. The Court thus concludes that by failing to follow SSR 96-8p, the ALJ erred in finding that Plaintiff could perform her relevant past work as a waitress between August 1, 1993 and December 31, 1994. On remand, the ALJ shall address this deficiency.

### C.     "SUBSTANTIAL GAINFUL ACTIVITY"

The ALJ next found that Plaintiff was not disabled from January 1995 to May 1996 due to having engaged in "substantial gainful activity" during that time period. Specifically, Plaintiff worked at Lagunitas from April 1995 through February 1996, where she earned

$4,756.60. AR 334-35. Her job at Lagunitas overlapped with her work as an shopping mall interviewer for Friedman from December 1995 through May 1996 where she earned $4,318.60 in 1995 and $438.00 in 1996. AR 331. Plaintiff contends that, given the ALJ's conclusion that her work at Lagunitas and Friedman qualified as substantial gainful activity, it was incumbent upon the ALJ to then determine whether "the shopping mall work was an unsatisfactory [sic] work attempt," which would then have precluded a finding of substantial gainful activity. Pl.'s Mot. at 18, 21.

A claimant who is able to perform substantial gainful activity cannot be found disabled at the first step of the disability evaluation process. 20 C.F.R. § 404.1520(a)(4)(i) ("At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled . . . ."). The regulations explain that several different criteria may be analyzed to determine whether a claimant is able to perform such activity:

> (a) We use several guides to decide whether the work you have done shows that you are able to do substantial gainful activity. If you are working or have worked as an employee, we will use the provisions in paragraphs (a) through (d) of this section that are relevant to your work activity. We will use these provisions whenever they are appropriate, whether in connection with your application for disability benefits (when we make an initial determination on your application and throughout any appeals you may request), after you have become entitled to a period of disability or to disability benefits, or both.

20 C.F.R. § 404.1574(a). Paragraph (c) of this regulation, which is entitled "unsuccessful work attempt," provides that "work you have done will not show that you are able to do substantial gainful activity if, after working for a period of *6 months or less*, your impairment forced you to stop working or to reduce the amount of work you do so that your earnings from such work fall below the substantial gainful activity . . . ." Id. § 404.1574(c) (emphasis added).

As an initial matter, the Commissioner argues that there was no need for the ALJ to consider whether Plaintiff's work for Friedman constituted an unsuccessful work attempt because she worked there *more than* six months. Def.'s Mot. at 12-13. However, the record shows only that Plaintiff worked for Friedman for "five or six months." AR 331. As such, it is possible that Plaintiff's tenure at Friedman may be considered for purposes of the unsuccessful

work attempt provision. That notwithstanding, the Court finds no error in the ALJ's conclusions. At the hearing, the ALJ specifically raised the question as to whether Plaintiff was claiming that her employment at Friedman during this time period constituted an unsuccessful work attempt. AR 332-33. Despite such opportunity, Plaintiff failed to make any such argument. AT 333.

In her reply, Plaintiff concedes her failure to make any argument in support of an unsuccessful work attempt finding, but asserts that "[t]his argument is insufficient because the ALJ failed to make a UWA [unsuccessful work attempt] ruling in his decision which is legal error." Pl.'s Reply at 5. Though not entirely clear, Plaintiff appears to be arguing that the ALJ was obligated to make a finding regarding whether Plaintiff's work for Friedman was an unsuccessful work attempt, notwithstanding the fact that neither Plaintiff nor her counsel made any argument to that effect. Plaintiff fails to provide any authority to support this illogical argument. Obviously, there was no need for the ALJ to reach the question of unsuccessful work attempt in light of Plaintiff's counsel's admitted failure to make any argument or a record in support thereof. The Court therefore rejects Plaintiff's argument that the ALJ erred in finding that Plaintiff performed substantial gainful activity from January 1995 to May 1996. No remand on this issue is necessary or appropriate.[3]

### D. PAST RELEVANT WORK AS AN INTERVIEWER

The ALJ found that Plaintiff was not disabled during the time period May 1996 until March 2, 1998. AR 70. In May 1996, Plaintiff's position as an interviewer was terminated by Friedman. AR 331, 70. The ALJ found that the interviewer position constituted "past relevant work," and that Plaintiff had failed to carry her burden of demonstrating that she could not continue in that position. In particular, he noted that Plaintiff was terminated due to a conflict with her manager. AR 70. He also found that the record was devoid of reports indicating any mental health treatment from February 1996 to March 1998, and that while Plaintiff likely

---

[3] In her reply, Plaintiff argues for the first time that a "work activity report" is necessary to show an unsuccessful work attempt. Pl.'s Reply at 5. The Court need not consider arguments raised for the first time in a reply brief. See fn. 1, *supra*. In addition, Plaintiffs fails to cite any authority for this proposition.

suffered from carpal tunnel syndrome, "there has been an absence of testing and clearly inadequate and inappropriate treatment." Id.

Plaintiff contends that the ALJ was obligated to contact her medical providers in order to fully and fairly develop the record and that the ALJ erred in failing to do so. Pl.'s Mot. at 22. "'In Social Security cases the ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered.'" Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir. 2005) (quoting Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983) (per curiam)). Section 404.1512(e)(1) to Title 20 of the Code of Federal Regulations provides:

> (e) Recontacting medical sources. *When the evidence we receive from your treating physician or psychologist or other medical source is inadequate for us to determine whether you are disabled*, we will need additional information to reach a determination or a decision. To obtain the information, we will take the following actions.
>
> 1. We will first recontact your treating physician or psychologist or other medical source to determine whether the additional information we need is readily available. We will seek additional evidence or clarification from your medical source *when the report from your medical source contains a conflict or ambiguity that must be resolved*, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques.

20 C.F.R. § 404.1512(e)(1) (emphasis added). Thus, the ALJ has "an affirmative duty to supplement [Plaintiff]'s medical record, to the extent it was incomplete, before rejecting [his] petition at so early a stage in the analysis." Id. (citing 20 C.F.R. § 404.1512(e)(1) and S.S.R. 96-5p).

The Commissioner argues that section 404.1512(e)(1) applicable only where the medical reports are incomplete and conflicting, and that in this case, Plaintiff never complied with her obligation to provide such evidence in the first instance. Def.'s Opp'n at 15-16. In addition, the Commissioner points out that the ALJ afforded Plaintiff the opportunity to present additional records but she declined to do so. AR 273. Plaintiff disputes none of this. Instead, she argues for the first time in her reply that the ALJ should have considered the report of Dr.

Hill, a consultative (as opposed to treating) physician, who made findings in July 1995 that Plaintiff "certainly is not able to be responsible today" (AR 250-51) and in September 1998 that she was "extremely flighty and unable to focus." Pl.'s Reply at 10; AR 291. However, because Plaintiff failed to raise this issue in her opening brief, it is deemed waived and is not properly before the Court. See fn. 1, *supra*.[4]

More problematic, however, is Plaintiff's contention that the ALJ failed to comport with SSR 96-8p in reaching his conclusion that Plaintiff was able to perform her past relevant work as an interviewer. AR 70. As discussed above, SSR 96-8p requires the RFC to identify a claimant's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis. Nonetheless, the Commissioner fails to identify any part of the record that supports the conclusion that the ALJ followed SSR 96-8p. In fact, the Commissioner completely ignores this argument in his opposition. On remand, the ALJ shall address this deficiency.[5]

### E. THE ALJ'S CREDIBILITY ASSESSMENT OF PLAINTIFF

Finally, Plaintiff challenges the ALJ's finding that "claimant's subjective complaints for the time period from August 1, 1993 to March 2, 1998 are not fully credible." AR 70. "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir.

---

[4] Plaintiff concedes that she failed to raise this argument in her opening brief, but argues that her failure to do so must give way to this Court's obligation to consider the record as a whole. Pl.'s Opp'n to Def.'s Mot. to Strike at 4. Plaintiff—or more accurately, Plaintiff's counsel—ignores that it is her obligation to demonstrate error on the part of the ALJ. As such, it is Plaintiff's, not the Court's burden, to identify those alleged errors. As the Ninth Circuit has recognized, "[j]udges are not like pigs, hunting for truffles buried in briefs." Indep. Towers of Wash., 350 F.3d at 929 (internal quotation marks and citation omitted).

[5] Plaintiff also complains that the ALJ did not call a vocational expert to opine on the characteristics of her past work as an interviewer. Pl.'s Mot. at 23. The ALJ need not call a vocational expert where the claimant is able to perform past work. Crane v. Shalala, 76 F.3d 251, 255 (9th Cir. 1996). Because the ALJ's assessment of Plaintiff's RFC and ability to perform past work must be reconsidered on remand, the Court does not reach this issue.

2008). So long as substantial evidence supports the ALJ's credibility determination, the district court cannot engage in "second guessing" his or her findings. Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002).

Here, the ALJ based his credibility assessment on his determination that between August 1, 1993 and March 2, 1998: (1) Plaintiff had been engaged in substantial gainful activity; (2) no physician had concluded during that time that, based on medical evidence, Plaintiff was unable to perform work related functions for over twelve continuous months; (3) two treating psychiatrists (Dr. Mary Olowin and Dr. Sapp) each independently stated that Plaintiff did not meet the criteria for disability under the Social Security system; (4) during this time, treating psychiatrist Dr. Jean Ponteau stated that Plaintiff was doing well; (5) there is an absence of treatment records for much of this time; (6) the existing treatment records do not support claimant's allegation of disability; (7) Plaintiff reported to the consultative psychiatric examiner (Dr. Hill) that her job was going well in July 1995; and (8) Plaintiff's activities were extensive. AR 70.

Plaintiff ignores the above findings, and instead, claims that pursuant to SSR 96-2p, the ALJ erred in failing to give any weight to Dr. Hill's opinions. Pl.'s Mot. at 24-25. This particular guideline, entitled Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions (reprinted at 1996 WL 374188 (SSA July 2, 1996)), applies expressly to "a *treating* source's medical opinion." Since Dr. Hill was a *consultative* as opposed to a treating physician, SSR 96-2p is inapposite. See Fabian v. Astrue, 2009 WL 3334783 at *3 (M.D. Fla., Sept. 18, 2009) ("Obviously, Dr. Pasach is not a treating physician. Accordingly, his opinion does not fall within Social Security Ruling 96-2p . . . ."); see also 20 C.F.R. § 416.927(d)(2) (more weight to treating physicians than a consultative physician). In any event, Plaintiff's conclusory assertion that the ALJ afforded no weight to Dr. Hill's opinions is belied by the fact that the ALJ discussed his opinions at several different points in his Decision. AR 67, 69, 71.

For similar reasons, Plaintiff's argument regarding the ALJ's consideration of her father's statement also fails. In his Decision, the ALJ cited a "daily activities questionnaire" completed by Plaintiff's father as evidence of what activities Plaintiff could then engage in.

AR 69, 132. Relying on SSR 06-3p, Plaintiff argues that the ALJ erred in not discussing the activities that Plaintiff could *not* engage in. Pl.'s Mot. at 24-25. SSR 06-3p provides guidance on how an ALJ is to consider "opinions from sources who are not 'acceptable medical sources' . . . ." See 2006 WL 2329939. Under this guideline, the ALJ should discuss information from other sources, such as family members, *when* it has "an effect on the outcome of the case." Id. Here, Plaintiff's father's statement is largely duplicative of Plaintiff's statement regarding her daily activities. AR 68-69, 128-131. Plaintiff makes no showing that any aspects of the father's statement not specifically discussed by the ALJ would have affected the outcome of the action nor has she demonstrated that the ALJ's consideration of that particular information negatively impacted his assessment of her credibility. Thus, the Court finds that the ALJ did not err in his credibility assessment of Plaintiff.

### F. ADDITIONAL PROCEDURES ON REMAND

The Commissioner requests that in the event the Court is inclined to remand the action, that the Court direct the ALJ to consider Plaintiff's claim in light of 20 C.F.R. § 404.1535(b)(1). Def.'s Opp'n at 20. In the case of an individual suffering from alcoholism or drug addiction, the Act specifies that "[a]n individual shall not be considered to be disabled for purposes of this subchapter if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J). Under the Act's regulations, the "key factor" in determining whether a claimant's alcohol or drug abuse is a material contributing factor to the claimant's disability is "whether [the Commissioner] would still find [the claimant] disabled if [he or she] stopped using drugs or alcohol." 20 C.F.R. §§ 404.1535(b)(1), 416.935(b)(1). Given Plaintiff's past history of substance abuse, and in light of Plaintiff's lack of response to this point, the Court finds that on remand, the ALJ should conduct an inquiry under 20 C.F.R. § 404.1535.

## IV. CONCLUSION

Based on its review and consideration of the entire record, the Court has concluded that a remand for further administrative proceedings, pursuant to sentence four of 42 U.S.C. § 405(g), is warranted. Accordingly,

IT IS HEREBY ORDERED that the Decision of the Commissioner is REVERSED in part and the action is REMANDED for further administrative proceedings consistent with this Order. The Clerk shall close this file and terminate all pending matters.

IT IS SO ORDERED.

Dated: March 29, 2010

*Saundra B Armstrong*
SAUNDRA BROWN ARMSTRONG
United States District Judge